Ronald K. GOSSAGE, Appellant,

v.

Dr. Mack ROBERTS, M.D., Appellee.

No. 94–CA–1743–MR.

Court of Appeals of Kentucky.

Aug. 18, 1995.

Ronald K. Gossage, Monticello, pro se.

John L. Tate, Monique R. Hunt, Stites & Harbison, Louisville, for appellee.

Before HOWERTON, JOHNSTONE and SCHRODER, JJ.

JOHNSTONE, Judge.

At issue is the propriety of the summary dismissal of appellant's medical malpractice claim stemming from alleged negligence in prescribing Prozac and Xanax to treat appellant's depression. Of the several arguments advanced for reversal, the primary focus of our review is the conclusion that appellant is collaterally estopped from relitigating causation already established in a criminal proceeding for his act of shooting two women while taking the drugs in question. Having considered appellant's arguments in light of facts appearing of record, we are convinced that the collateral estoppel doctrine was properly applied to appellant's claims stemming from his conviction for assault under extreme emotional disturbance, but that it has no preclusive effect on his claims unrelated to the criminal proceeding.

After the illness and death of his wife from Lupus, Ronald Gossage sought treatment for depression from his family physician, appellee, Dr. Mack Roberts. Dr. Roberts initially prescribed Valium, but on appellant's return visit he changed the prescription to one milligram of Xanax twice a day. Approximately two months later, in June 1990, Dr. Roberts placed appellant on twenty milligrams of Prozac in the morning and one milligram of Xanax at bedtime.

On February 12, 1991, appellant was charged in the shooting of Carol Denny and her mother at their home. At trial on these offenses, appellant denied any memory of the events on the day of the shooting. Although his sole defense was involuntary intoxication from ingestion of prescription drugs, no instruction on involuntary intoxication was given. The jury was instructed, however, on assault under extreme emotional disturbance defined as follows:

> a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment; and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the Defendant's situation under circumstances as the Defendant believed them to be.

Rejecting instructions on assault in the first, second, and fourth degree, the jury convicted appellant of assault under extreme emotional disturbance and recommended sentences of two three-year terms to be served concurrently. The trial judge, however, ordered appellant's sentences to run consecutively.

Appellant subsequently instituted this proceeding alleging that appellee's negligence in

prescribing Prozac and Xanax without proper supervision produced the violent acts which resulted in his conviction, as well as causing him to incur pain and suffering, lost wages, emotional distress, impairment of future earnings and loss of enjoyment of life. The parties proceeded with discovery and on April 1, 1994, appellee moved for summary judgment alleging that appellant's claims were barred by the doctrine of collateral estoppel. Although the motion was originally scheduled to be heard on May 17, 1994, it was continued until June 7, 1994, because it appeared that "plaintiff was not served with notice." On May 26, 1994, counsel for appellant moved to be relieved of their responsibilities in the action. The trial judge refused to consider that motion because it was not properly noticed for motion hour in accordance with the local rules. Thus, despite the fact that appellant was incarcerated and counsel did not respond to nor appear at argument on appellee's motion for summary judgment, the trial judge granted the motion and dismissed the complaint. Included in this order was a denial of appellant's motion to proceed in forma pauperis and for an enlargement of time to employ new counsel and to respond to the summary judgment motion. This appeal followed the denial of appellant's pro se motion to vacate the dismissal of his case.

■ Appellant advances several procedural issues which we need not address because our resolution of the collateral estoppel question renders them moot. We would note, however, that we have serious reservations about the refusal to grant an incarcerated plaintiff an enlargement of time to obtain new counsel so as to respond to a summary judgment motion which resulted in the dismissal of his case. Those reservations notwithstanding, our primary concern is the ruling that a jury determination that appellant acted under extreme emotional disturbance collaterally estopped him from litigating in a civil forum alleged negligence in prescribing drugs which may have been the source of his emotional disturbance. We are not unmindful that, under proper circumstances, a criminal conviction may be used for purposes of collateral estoppel in later civil proceedings, *Roberts v. Wilcox*, Ky.App., 805 S.W.2d 152 (1991), but it is also clear that to be so

utilized the criminal judgment must of necessity finally dispose of the matters in controversy.

The prerequisites of a proper utilization of the doctrine were outlined and analyzed in *Sedley v. City of West Buechel*, Ky., 461 S.W.2d 556 (1970), wherein the issue or claim preclusion aspect of *res judicata* was adopted as the law of this Commonwealth. In so doing, the Court predicated its holding on the following principles relevant to the case at bar:

> *The general rule is that a judgment in a former action operates as an estoppel only as to matters which were necessarily involved and determined in the former action, and is not conclusive as to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment.*

> . . . .

> Many jurisdictions, however, have adopted the doctrine of "claim preclusion" or "issue preclusion" under which a person who was not a party to the former action nor in privity with such a party may assert res judicata *against* a party to that action, so as to preclude the relitigation of an issue determined in the prior action. The rule contemplates that the court in which the plea of res judicata is asserted shall inquire whether the judgment in the former action was in fact rendered under such conditions that the party against whom res judicata is pleaded had a realistically full and fair opportunity to present his case. See 46 Am.Jur.2d, Judgments, sec. 522, pp. 674 to 676; *Bernhard v. Bank of America Nat. Trust & Sav. Ass'n*, 19 Cal.2d 807, 122 P.2d 892 (1942). In making that determination there is less basis for finding that the party did have such an opportunity, where he was a *defendant* in the former action, than where he was the plaintiff. See 65 Harvard Law Review 820 at 864. *It would seem that the rule would embody the qualification, hereinbefore mentioned, that the adjudication of the issue was essential to the determination of the former case.*

*Sedley,* 461 S.W.2d at 558–59 (emphasis added; footnote omitted).

■ In ruling on the summary judgment motion, the trial judge placed considerable weight on an Illinois decision in which the doctrine of collateral estoppel was utilized to bar an action against the manufacturers of Xanax and Prozac, and the physician who prescribed them, on the basis that the plaintiff had previously pled guilty in a criminal proceeding to actions that he later asserted were caused by ingestion of the drugs in question. The Court in *Bulfin v. Eli Lilly & Company,* 244 Ill.App.3d 785, 185 Ill.Dec. 269, 614 N.E.2d 403 (1 Dist.1993), explained its application of the doctrine in these terms:

Accordingly, each element necessary to the application of collateral estoppel has been satisfied in this case. Were the doctrine to be applied, it would bar the plaintiff from maintaining in the instant action that his Arizona crimes were committed through no fault of his own due to an involuntary state of drug-induced intoxication.

Even where each element has been established, however, collateral estoppel will not be applied if an injustice would result. (*S & S Automotive v. Checker Taxi Co.* (1988), 166 Ill.App.3d 6, 117 Ill.Dec. 578, 520 N.E.2d 929.) Before applying the doctrine, the court must first determine that the party against whom the estoppel is asserted had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding. (Citations omitted).

At the hearing on defendants' motion for involuntary dismissal, the evidence established that plaintiff had raised the defenses of lack of intent, lack of specific intent, insanity, intoxication, and diminished capacity during the Arizona criminal proceeding. The affidavit of plaintiff's Arizona criminal attorney in opposition to defendants' motion states that prior to plaintiff's plea of guilty to the reduced charges, both he and plaintiff had reason to believe that Prozac and/or Xanex (sic) caused plaintiff's actions. There is no question that plaintiff had a full and fair opportunity in the Arizona proceeding to litigate the issue of whether his actions were the result of an involuntarily induced state of intoxication. Plaintiff voluntarily, intelligently, and knowingly waived the issue and entered his plea of guilty. On the incentive to litigate question, a person faced with the potential of being sentenced to a substantial term in prison has every incentive to interpose a defense that would constitute a complete defense to the crimes he is charged with committing. It would be an anomaly to suggest that, when plaintiff abandoned his defense, he did so out of a lack of incentive as opposed to a desire to substantially reduce his potential prison term.

Plaintiff's final argument is that applying the doctrine of collateral estoppel to this case would violate the public policy of Illinois. Plaintiff cites no authority for this proposition, nor can we find any. We believe that the matter is quite succinctly put in the quotation from Professor Geoffrey C. Hazard, Jr. reference in Upjohn's brief:

"The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act. Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, *chutzpah,* is too much to take. There certainly should be an estoppel in such a case." (Hazard, *Revisiting the Second Restatement of Judgments; Issue Preclusion and Related Problems,* 66 Cornell L.Rev. 564, 578 (1981)).

Because plaintiff is collaterally estopped from contending that his incarceration is the result of anything other than his own intentional acts, nothing that he alleges against any of the defendants has a proximate causal relationship to his incarceration.

*Bulfin v. Eli Lilly & Company,* 185 Ill.Dec. at 273, 614 N.E.2d at 407. Contrary to appellant's assertion that his conviction for assault under extreme emotional disturbance

does not fall under the category of intentional conduct upon which the rationale of the *Bulfin* case is hinged, we are of the opinion that, insofar as his claims for damages relative to his incarceration are concerned, the Illinois case is indistinguishable.

The flaw in appellant's argument emanates from his misapprehension as to the nature of the crime of assault under extreme emotional disturbance. As the Commentary to KRS 508.040, Assault Under Extreme Emotional Disturbance, makes clear, "The purpose of this statute is to provide the same type of mitigating, degree-reducing factor in the law of assault as exists in the law of homicide." *See Commonwealth v. Elmore,* Ky., 831 S.W.2d 183, 186 (1992), concurring opinion of Justice Leibson. It does not, as appellant suggests, alter the intentional nature of his crime. Thus, because appellant stands convicted of a crime involving intentional conduct, the trial judge correctly applied the collateral estoppel doctrine as precluding relitigation of the issue of causation for damages he alleges were occasioned by his incarceration.

However, under the analysis required by *Sedley, supra,* the doctrine does not apply to appellant's claims for lost wages, pain and suffering, emotional distress and loss of enjoyment of life as they are distinct elements of damage immaterial to the determination of the criminal proceeding. As such, it cannot be said that appellant had the "full and fair opportunity" to present those issues as envisioned by the Court in *Sedley* or by the doctrine itself.

We, therefore, reverse that portion of the lower court judgment which summarily dismissed appellant's claim unrelated to his criminal conviction and remand the case for further proceedings on the merits of those claims. In all other respects, the judgment of the Wayne Circuit Court is affirmed.

All concur.